hear ye hear ye hear ye. The United States Court of Appeals for the Fifth Circuit is now open. According to law, God save the United States in this honorable court. Good morning. Thank you, Counsel, for participating by video. We really appreciate that. The first case this morning is Sauceda versus City of San Benito. Miss Klein is representing Mr. Sauceda. Miss I'm here representing Ricardo Sauceda and his claim against the city of San Benito and Officer Lopez. We are here on an appeal of the granting of a complete summary judgment against Mr. Sauceda's claims, which we believe is inappropriate on a number of grounds. The defendants claimed as a matter of law there was no excessive force used. They claimed that the offense was he was arrested for resisting arrest. They claimed that there was no probable cause for the arrest and that they claim that there was probable cause and that he's entitled to qualified immunity. They claim there is no controverting evidence because of it being a no evidence standard. The facts of this case are that there was a neighbor across the street who apparently made a call to the police, but it was not a 911 call. And so an officer came alone and the neighbor was filming, and there are a number of videotapes. In addition to the body cam video, what is going to be critical in the consideration of the summary judgment evidence is the fact that the body cam video is concealed at a number of places. There's a total of over 33 seconds that's not visible, and the district judge apparently determined that if it was not visible, it must go against the plaintiff so that he got into a weighing of the fact position and said that everything that the plaintiff claimed that happened and the bystanders claimed that happened if it did not happen on the video, even when there was concealment, which could have been intentional. We don't know, but it must have gone against the plaintiff. What do you do with the fact that the judge also noted the lack of sound that would indicate because of the time hit, you'd hear something like that. And the that. So how do you address that? That there are some people that can be hit, and he said he lost consciousness for a moment. And also that these are not high tech cameras. Body cam. Body cam videos are not high tech pieces of equipment, but you again cannot infer against the plaintiff. When it's a summary judgment case, you have to take the evidence most favorable to the plaintiff when considering it on an appeal on a summary judgment standard. But what I'm trying to say, this whole video thing is, you know, if you say X happened in the video shows, it could not have happened. Then the video rules. If the video is unclear, then I agree you have a fact issue. The question I have is, is it reasonable for the district court to say a baton hitting a person, even if that person was unconscious, would make the noise of the hit. So I just hit my head on my my notepad. And you heard that. So that's right thing. So you also have a mic with that. You have a mic. You have a microphone where you are. Certainly, Mr. Lowe, Mr. So say that did not have a microphone on him. And he is a somewhat fleshy kind of individual. So if he was hit in the neck, he was hit in the shoulder. But the point of the matter is this is summary judgment. You have a bystander who's not been shown to have any bias whatsoever standing by who gives a sworn statement that in fact the man was hit with a baton multiple times. But even without hitting with the baton, the fact that he grabbed him by the lapel and threw him to the ground is excessive force. When you throw a disabled man to the ground, he has no idea that he's being arrested. That if you read the transcript of the encounter between Mr. So say that and the defendant, you will see that the first page says Mr. So say this basically telling him I'm glad you're here because I've made so many complaints against this man because he's been out here peeing in front of my wife. So Mr. So say the thought that he was the victim. He thought that this man was following up on other complaints that he had made that they had done nothing about. And then the officer says, well, give me your driver's license. And Mr. So say this is well, why should I give you my driver's license? Basically, he wasn't driving. He didn't ask him his name because he knew his name because Mr. So say this said he had been to the place many times. There had been many reports and Mr. So say this said, Well, I'm not wanting to follow a report today. He said, I'm not asking to do anything. Just I'm gonna go back in my and that the officer was there to tend to his needs. And there is no evidence that Mr. Cortez was interviewed before he went to talk to Mr. So say that. In fact, the evidence is to the contrary, that Lopez went straight to self say that did not talk to Cortez, did not know that Cortez felt that he was offended. And Cortez was just standing there filming him. And what did he say? Give me your license. And he said, Why? I'm not making a report. He says, I'm coming after you, brother. He didn't say I'm going to arrest you. And there is no probable cause because there's not a shred of evidence, not a scintilla of evidence that Mr. So say that had done anything wrong that would give the officer the probability or the right to go through his gate into his yard, grab him by the lapel and throw him to the ground. And that part does not seem to be disputed that he threw him. I thought the bystander said that he saw the officer swing the baton. Did he actually say he saw it land on Mr. So say that I think he was not in a position that he could see him hit, but he saw him attempting to hit and that in itself, there was no reason to be pounding on Mr. So say that with a baton, 33 seconds of silence or I'm not visible. What's happening on on the video? What's the longest? What are the time periods like one or two seconds? Or what's the longest period in our brief? We actually have all of that stated. Let me get you the specifics because we have all of it timed piece by piece. Um, let me get that for you. I'll look back at you. I don't want to interrupt. It's um, what was the longest period of time? That's our outlook. It is in the brief because we have the number of seconds of the various times that there's nothing visible. But again, here it is. It says that the video shows that, um, the lens is covered from 3 32 to 3 41 and 3 42 to 3 44 and 1 52 to 201, which is nine seconds. And then it appears that his hand is covering the lens from 2 13 to 2 20, which is another seven. And there's five seconds that only shows the wife. And then there's eight seconds at 3 32 where nothing is seen at all. So that's 33 seconds where you cannot see the plane. What page were you reading from this time? That is beginning on page 25 and going over to 26 in our original brief. So that again that you cannot weigh the evidence and conclude that all of that would be against the plaintiff. And so there was, um, the fact is that the plaintiff had no idea he was being asked you this because even if we move past the notion of whether or not there was a constitutional violation, we still have the qualified immunity situation. And frankly, I have seen case after case after case where, if I was doing a training session for police officers, I would not recommend that they do it that way. But that's separate from the question of whether it's violated clearly established law. So what is your best case for the notion that this violated clearly established law? I think under Flores versus Palacios, the 2000 four case out of the Fifth Circuit that you have to have probable cause that the suspect has committed a crime, and he never even interviewed Cortez. He had no personal knowledge whatsoever that our gentleman was doing anything. And when he went up to Mr South, say the mistress, I'll say the thought that he was coming to talk to him about his complaints and Washington versus Salazar says you do have a warrantless arrest, and you have a right to be free from excessive force during an arrest. There was no reason to throw this man to the ground whatsoever. And on the training issue, there were no supervisors on duty on the weekend in the Brown versus Bryan County case in 2000 says that if you have indifference to the rights of people that that will satisfy the requirement of training and satisfy a lack of training case. Because if there is no probable cause, and if there is excessive force, then you have you you lose the immunity. And here, Chief Pettis, our expert said that there should have been better training, and he should have been trained in de escalation. Now, one of the most central things that that develops into this argument is the fact that our expert, the district judge said, I'm giving no credit to his opinion. He is a police chief. He gave sworn testimony, and the district judge, for no reason in the absence of a Dober challenge in the absence of any objection to his testimony, the district judge unilaterally decided that he was just going to give no weight to his testimony whatsoever. That is not a proper summary judgment standard. The district judge may not just decide he's gonna try the case based on the argument and that he's gonna turn around and decide whether or not the plaintiff would prevail at trial. You have the problem with there's a legal question on the qualified immunity. And again, it's not a question of whether this was a good thing that the police officer did. I think we can all agree it wasn't. The question is qualified immunity. And since 2004, there has been case after case after case from the United States Supreme Court further strengthening the notion that qualified whether whether that's the right approach or not, that qualified immunity is very much based on the facts and that the case law needs to be clear that this violated constitutional rights so that it's clearly established, and it can't be a high level of generality and so on and so forth. Um, so I mean, I was on the Fifth Circuit panel that got reversed in Mullinex, so I'm very well aware of this. So what do you do? Central to the determination of immunity is the question of good faith. You cannot eliminate good faith. And this gentleman, this miss that Officer Lopez said that he was going that he he's he did not place Mr. So say that under arrest, and he lied about it. There's no way to get around that. He has admitted that there are false statements, but it's an objective standard. If you know, it's a major statement qualified immunity. But the person who made the statement who was the so called arresting officer has admitted that his report was untruthful. So how can you give him the benefit of the doubt on good faith? Because qualified immunity is determined by the totality of the circumstances at the moment of the arrest, and that has to be sufficient for a reasonable person to conclude that the suspect had committed a crime. He had no inkling that this man had committed a crime. He did not talk to the complainant. He did not do any investigation. What he did was and even his own chief, Chief Morales, said that arresting somebody for failure to policy, they will arrest for failure to provide a driver's license, and that is against the law. The Texas Penal Code 38.02 says you cannot be arrested for failure to provide the driver's license. And this you have to look at the severity of the crime. At best, this was a Class C misdemeanor at best. And it's interesting to note that they dropped the charges for resisting arrest. The his name and arresting him for failure to provide the driver's license is illegal. So how can you say that the police officer was acting in good faith? But also we have clearly from an objective standpoint, we have unreasonably excessive force. And when the facts air in dispute, the qualified immunity cannot be granted. And that is the problem here. All the case law says that the facts are in dispute. You go to a jury. The jury is the one who said that he did not interview Cortez, but the city says that he did. And so by the record, it is not borne out by the record. The record does not establish that he went and talked to Cortez at all. And there is nothing in the record that is sworn that says so. And so therefore, you cannot construe that against the poor complainant is the one who's gotten beaten up and taken to the hospital. And the fact that he was injured is not even in dispute. The man had to go to the hospital and spent two days back and forth in jail. And Chief Pettis says, who was never challenged, says that there was no objection. There was no objection to his testimony. And he said there was excessive force. So he they tried to say there was plain view, which clearly there was not. Nothing happened in the plain view. He was not resisting arrest at the same at the time because the judge chose to believe one and not the other. But if there's a dispute as to the facts, it goes to the jury and qualified immunity will not be allowed. And he threatened him and said, I'm coming after you, brother. So ultimately, he even had a defense of justification because he was threatened by the officer. So we plan on your time is expiring. You save time. It's Dracula. Thank you. Um, the way I see it, you're looking at two different issues. Two main issues. One, whether he had the authority to arrest and second, whether the force use was objective, clearly excessive to the need. And a sub issue is whether the individual's entitled to qualified immunity. Officer Lopez. The issue of whether the city is entitled to dismissal does not seem to be argued very heavily. So I don't know that that's so much of an issue. Let me start with the authority for South Center to arrest. I'm sorry for Lopez to arrest South Center. Um, the first thing to remember is, as I said, as starts walking away as Lopez is conducting an investigation that itself constitutes evading arrest or detention for which he could be arrested under Penal Code Section 38.4. Finley B. State supports that. And, uh, Carol V. Ellington from this court emphasized that you can arrest for misdemeanor, uh, crime of evading detention or arrest. What back? What crime was being investigated? At that point, it was disorderly conduct. Back it up. By whom? By whom? By South said that was being investigated for disorderly conduct based on his actions with Mr. Cortez across the street. Miss Klein references that there's no evidence that Mr. Cortez was interviewed. He was. There's a video, a body cam from Officer Lopez. Clearly, he walks up to the party that Mr. Cortez is standing there. He talks to him about what happened. He discusses what happened. Now, when you get a 911 call or a regular call, you don't go to the person who's being suspected. He didn't even know who was being suspected of a crime. At that point, you go to the person who made the call. What? What? What was the officer told? Was the disorderly conduct? What? What was who told the officer? So I'll say no. And Lopez, what were they told that constituted the disorderly conduct? Okay, Lopez is also said that was the plaintiff here. But Lopez, what? What? What was love? Has told this? I'll say no had done. It was disorderly conduct. What he said is that I could I could go through that specifically. Judge Marco Cortez told him that he was standing across the street waiting for his girlfriend. So Sarah walks up to the other side of the street, grabs his crotch and says, What are you looking at? At that point, um, Cortez starts to try to videotape, but he stops it. So I'll say that then grabs his crotch, says, Do you see a sign garage sale? Free puppies? Free penis? Um, he was on his own property and what was that? Any of that against the law? In a sense, yes. For example, if he was standing naked on his own property with Children walking by just because he's on his own property, not like what was he doing? That was he he was making on. Uh, he was making provocative gestures in an attempt to that were offensive to Mr Cortez at the end of the body cam interview with Mr Cortez. Uh, he test Officer Lopez asked him, Were you offended by those comments? And he said he was disorderly conduct. It's intentionally or knowingly using abusive, indecent, profane or vulgar language, uh, or abuse or threat to a person in a public place. And in this case, he made it by extending his his actions beyond the periphery of his own yard. Just like if he had been standing naked and Children walking by, he may not be. He may be in his own yard, but the fact that he projected outside if he had made racial comments or loud music that could be offensive by itself, even if he's confined to his own yard, um, that causes a brief tends to incite a breach of the peace. It's not a difficult standards, not a long, complicated standard, but that's enough. And he had enough at that point could very least investigate and make a determination. How was Mr Saucedo advised that he was under arrest for disorderly conduct? The way it started off is he approached just trying to get the information to start off. He wanted the identification, not simply his verbal response to a name, rank and serial number because people lie about that. So he asked him for his I. D. He refused to provide the I. D. And then he starts walking away. At that point, backing up, he didn't turn his back on getting backing up for actually, actually, if you look at the body, the body cam from Officer Lopez, you see him facing the fence. He starts walking away, turns towards the house and he turns back. He goes back and forth. He's not just walking back like this. Uh, if you look at the body cam body cam, it will support that. But he says, No, you're not gonna come in here. You're not gonna get here. And that's when Officer Lopez says, I'm coming after you, brother. And then he says, You're a clear indication that at that point he is gonna be arrested. He also has his handcuffs out. If you look at the video tape, the body cam, you could see he's holding his handcuffs as he's approaching him. You're gonna come with me, brother. He's being polite. He's not being offensive. He's trying to effect an arrest because he doesn't have the information. He cannot cite this guy because he doesn't know who he is yet. He cannot write a citation because he doesn't know the name yet. What about the evidence that he'd been there before? He had not been there before. The evidence actually is quite the contrary. Miss Klein misconstrues what happened. The plaintiff had prior complaints against Mr Cortez's grandfather. He had previously filed a complaint against Mr Cortez's grandfather for peeing in his yard, which he got arrested for the grandfather. They did take that action. Mr Lopez was not that person who arrested him. Mr Lopez had never been there before, and the testimony clearly showed he didn't know either Mr Lopez or I'm sorry, Mr Salceda or Mr Cortez as he approached either one of them. He was going there to investigate and find out what happened and take appropriate action. But because Mr Salceda kept walking away, he couldn't do that. Um, uh, at the very least, at that point, under Boston Supreme Court, uh, Mr Salceda knew he was not free to leave. This was not a I'm just a casual conversation where he could have just walked away. At that point, Officer Lopez had made clear that he was going to arrest him. The resisting arrest after that follows. The court hasn't gotten into much of that, but basically his actions after that in resisting arrest, pulling his hands away under Ramirez versus Martinez under Finley v State resisting taken to the ground and keeping your arms under your body is enough for a resisting arrest charge. And all that can establish a basis for resisting arrest, which you can arrest for even if the other charges don't hold water. That went alone. That's why the district judge supported that finding, because at the very least, you had that that he was resisting arrest, and that was indisputable. And he also had charges afterwards for assault on a peace officer. Now, on the excessive force, let me back up to that a little bit. I want to ask you about that. So if we were to conclude that there is a fact question about the baton, I think I know you think there's not. But let's say we thought there was a fact question about the baton. Would he still be entitled to qualified immunity even if he had hit with a baton? Yes, you would, because at this tell me where you made that argument in this case? Well, what I said is that they have not identified any facts that would establish excessive force. I mean, we discussed qualified immunity basically saying there was no prior case law to establish that the actions he took that you could determine he took were squarely governed by any prior case beyond debate. The all the witnesses, including plaintiff's proposal expert, agree that he was only using open hands techniques that they did not. I'm saying there is this debate about the 30 seconds, and I'm asking if we were to conclude that that debate about the 32nd means there is a fact issue about the baton. We would still have the question of if he used the baton, is that excessive force at least qualified immunity wise, clearly established and so on. Where did you make that argument that that is even if he's used the baton, it's still qualified immunity. Part of the difficulty I had with making that argument was that there wasn't any specific evidence or testimony that he used to put on a baton in any particular way. For example, these guy plaintiff and this witness he came up with at the last minute testified that he got struck with the baton. I still don't know where did he get struck struck on his arm on his back on his ribs on his head. Did he get struck on his hands while he was trying to to handcuff him? He only said he was injured. He didn't say where he didn't say when he didn't say at any time. Uh, that's why the district judge was having difficulty giving any credence to that allegation because it doesn't require under scott v. Harris. He doesn't require a irrefutable evidence that that happened. Uh, it only requires the judge to look at the facts in the light depicted by the videotape. It's hard to see anywhere in there. As he making any sound ouch or anything that would indicate that he had been hit. In addition, this is a 30 minute video. So for 30 minutes, the first part was less than five minutes. The remaining part after that never once mentions. And by the way, you hit me here, here, here or anywhere. He doesn't make any indication that he was actually struck. Um, and what this court said in Sheppard v. City of Shreveport, even with the videos far from the paragon of clarity, that case required that you have to rely on the video. In that case, it was a question whether he was 10 ft or 30 ft, whether he was running or stumbling. The point I'm trying to get at is there's no prior case law to establish that even with the facts, he's alleged, which are very broad and vague to say too much force was used. He has not identified what actual force was used. So without that, I didn't specifically address that because I something to address. They didn't say you're saying a baton to the leg would be different than a baton to the head. I don't know. In other words, it might. It probably would be. But not just that. It's uh, is the baton was a baton. How hard was upon baton made? In other words, if he places the baton while he's trying to move him, that would be a strike. But not what you would consider excessive. It's hard. That probably would be. Um, one other thing on the video while you're on that is the video showed the 3 to 9 2nd time periods when it when it was covered. It's because he was calling in for backup, and his body cameras right next to his microphone to call back to the city for backup. That's that's the time periods when it was covered. But during those time periods, you can still hear Mr South plaintiffs want to make Plato wants to make an argument that you couldn't hear him or that it was, uh, that he or that he passed out somehow. But if you look at it consistently, you'll see it doesn't do that. Also, the baton, the video from behind on Mr Cortez. He was across the street. It shows from the back. It shows, uh, Officer Lopez. After the knife fell out of Mr Sosa's, uh, here, you see the officer reached back here, grabbed his baton, flicked it open behind him. We pull his hand forward, reach over and push it and push it away like this over to get the knife out of the way. During that time, the wife comes forward and wants to get the phone his phone. He says, Get back, ma'am. Get back. And in his video now, you could see his hand with the baton right here. He's going like this. Get back, ma'am. Get back, ma'am. You could see his time. And then back to Cortez's video, you could see him put, close it and put it away like this. You're saying you can fill in the seconds with the other information. That's your argument. But I guess the only reason I'm asking, I mean, neither of y'all cited Pratt be here. I say 22 at 3rd 1 74. That was a case where the person was hogtied after failing to identify himself and died. And I dissented in that case. But the majority opinion was qualified immunity. And so whether I agree with that opinion, which I don't or not, I'm still bound by it. So I guess and I would just I would I agree. And the difficulty is, in this case, we don't have a factual dispute as to what was going on because the video fills in the videos fill in the blanks. And and what you have here is something more like the original situation you had with, uh, case will be Hughes or Mullinex, where they said there's no case that shows beyond beyond debate that, uh, this was this would have been a violation. Um, the what is your response to this good faith argument in the fact that there are definite errors or misstatements or lies, however you want to put it by Officer Lopez? Well, first of all, I clarify that there are not lies. What they consider lies or misstatements is when Officer Lopez disagrees with their version of the facts. Uh, they ask him one question, and you notice on their portions of the depositions, they redact certain portions and only include the portions that they want to be able to say. See, he said that if you look at the page, you could see where he said. But no, that's not what I meant. What I meant was something else. So those distinctions are really not there. Those are misleading. As for the good faith element of qualified immunity bunches, I would love to include that as an element of qualified immunity. It's an objective standard, as you pointed out. It's not there. So that's why I was wondering about it, right? I'd love to bring it in, but it's really just an objective standard. I want to ask about the city real quickly. The argument is that the city tells their officers to arrest people when they refuse to pull out their driver's license, and that that's against Texas law. Again, she mischaracterizes the actual testimony that asked the court to actually review or your clerks to actually review the testimony provided by the actual witnesses. They didn't say we authorize you to you arrest for that basis. That's their conclusion. Based on what they said, what they said was an officer is allowed to get the information from a suspect through their driver's license instead of just asking them instead of just asking them. What is your name, rank and serial number? They're entitled to do that. That is an authorized way to do it. They then extrapolate that to say, therefore, the court off the city authorizes arrests for not providing your driver's license. That's actually not not what they did. That's not what he said either. Um, the Oh, getting back to Judge Haynes question. Um, I refer the court also to the road. We didn't cite this case, but Robles v. Charlotta last year, where they could not identify any single incident that is a claim, uh, without support because I'll say that identified no evidence of the possibility of any recurring situations. They talked about it. Really, they're only claim it on against the city is for inadequate training and on inadequate training. They have not identified any basis to establish that they received no training. They can complain. Maybe they didn't receive enough training, but that does not make that is not established. City's deliberate indifference in not providing any training. There's a difference. You you were with you, Charlotte. Emphasize how put that difference is. No, you can have no customer policy of ignoring an obvious need to train or supervise. But here there was no need or no, no reference that there was an obvious need to do so. Although the plaintiff's proposed expert wanted to talk about what he would have liked to have seen. In other words, kind of training would like to see he agreed numerous times that he was talking about best practices. An officer's not held to liability based on best practices. He's held to no reasonable official would have done what he did in those circumstances. And there's prior case law to support the basis to establish that no officer would have done that. Um, again, I get back to the Colby Carson case from last year, where you had a number of different competing factual narratives. You had cold with where the call was facing away or towards the off officer when they fired the first shot, whether he was pointing a gun or at his head or at the he was not given the opportunity to ask the question about the baton, Mr Aguilar, because it seems to me that's the only real factual debate is what he did with his baton and whether he did hit Mr South Seda. And so that's why I'm asking whether that's a deterrent. Because, as you say, Colby Carson, the disputed facts were determinative of qualified immunity. At least that's what we ruled. Um, and so here I'm asking, and you made a good point. We don't know what he's claiming, where he claims he was hit. But if he was hit with the baton, let's assume arguendo he was hit with the baton. Does does the officer still get qualified immunity? That's my question. And again, um, I don't want to be misleading to the court. Um, but the simple yes or no, whether he was hit with the baton because you haven't identified how, where, to what extent, uh, simply holding your baton, like I said earlier, getting on his hand cuffs, for example, would not be considered. Well, we do know that he wasn't hit in such a way that he sustained any kind of permanent injury. Um, and again, I don't agree that the de minimis injury is critical here. But we do know that he was not hit in such a way that he died or became just further disabled or anything serious. Um, and so that's a good thing for Officer Lopez and for Mr Sosa. But does that influence the issue of the baton? Because I mean, if you took a baton and hit somebody hard in the head, they would they would be hurt. Yes, and it would be obvious if they were hurt. That gets back to the de minimis argument about whether, uh, he had any injury he did have was significant enough to establish violation. Again, I get back kind of a circular thing because the de minimis is really reflective of the fact that the force wasn't excessive. It's not the fact that you weren't injured enough to sue. It is how excessive is the force to create the injury. So that's what I'm asking about the baton. And that's why I was referring to Robles is because any injury, any any force that was used even with the baton was because he continued to resist arrest instead of complying with the instructions that were given to him. Uh, there's another case that you decided. I want to say last year before I'm having trouble finding my reference to it. Uh, but it's one where, uh, you had held that even. Oh, sorry. My time is up. I'm just trying to find that one case. Uh, I don't know what I did with him. Sorry. Is it in your brief? No, it's not. That's a whole point. I think it was Ayala versus Aransas County, uh, where they said that even if he had the force that they allegedly used would have been reasonable. That's Ayala versus Aransas County at 777 Federal Appendix 100. I believe you were on that case, Judge Holmes. Okay, thank you. And will you add a minute to Miss Klein's time? Thank you, Justice. So I would like to specifically address an issue that Justice Haynes, Judge Haynes brought up about Mr Aguilar statement that there's no indication as to where he was hit. In our record excerpts, we cite the self say the deposition beginning at page 1 30. But on page 1 35 of the deposition, Mr Aguilar asked him when you were standing, was that before you fell to the ground or after you got up? He said he hit me here, so I had to be standing up. He damaged my nerve so that on the video with the baton, if he's standing up, the baton was claimed to have been brought up only after he was on the ground. Well, he said that he was hit four times, at least for maybe five. When you can ending and on disputing that he used his hand on him and you can be hit with a hand or you can be hit with a baton. So the question to me is, where was he hit with the baton? Not where was he hit? No, he said for sure. Page 1 35 for sure. I was hit on the ground and I think when I was standing. But the point is, we don't resolve those issues right here. There is evidence, so that has to go to the jury. That seems to be what's missing here. And Mr Aguilar made a swipe at saying, Oh, well, they came up with this evidence at the last minute. His whole summary judgment was filed outside the deadline without leave of court. So if we want to talk about last minute filings, his entire motion for summary judgment was filed in violation of the pretrial order without emotion for me. I'm not concerned with when the evidence came up. I'm concerned with what the evidence is, because at the end of the day, if we disagree with you about the arrest and we find there was probable cause or at least qualified immunity level of probable cause to make the arrest, then you can use some force. Not all force is excessive. The question is excessive. And if he's fighting or he's resisting getting handcuffed, you can do some as the police officer some action. But it is clear from what? And so I'm sorry, Miss Klein, if I can finish. I'm sorry. I thought you were. The baton seems to be the focus of the excessiveness. And that's what I'm asking about is what did the baton hit? I'm not saying that hitting with your hand is acceptable in all circumstances. Don't understand me. But what did the baton hit? He said, First of all, the excessive force is a two part question. He threw him to the ground for not giving him his driver's license. There is. It is undisputed that Mr. So say that had not resisted arrest. All he had said was, Why do you need my driver's license? I'm not making a report. And he gets thrown to the ground by grabbing him by the lapel. That is me. What? What is the nature of this proceeding? This motion for summary judgment evidentiary hearing combined? What was it? It was the motion for summary judgment hearing that for whatever reason, the district judge decided that he was going to make a merits determination and he was going to weigh the facts and he was going to decide that he was not going to consider the plaintiff's evidence. But what's really important is that did you have a witness that you were going to present? I'm sorry. I didn't hear you. My reading of the record was that there was a witness you would present in your behalf, but the judge refused to take that into consideration. Is that right? Your Honor, I think what is confusing here is that he refused to give any he allowed the statement of Marco Cortez to go into the record, which was unsworn and it was hearsay contained. You didn't have another eyewitness that the judge refused to consider. He refused to give any credit to the eyewitnesses sworn statement. It's a sworn statement from the eyewitness and the baton back to that issue, he said, hit him on his nerve and he had a prior back surgery. He was telling the officer I need an ambulance because he was thrown to the ground for nothing. I also want to address Mr Aguilar's issue about projecting this disorderly conduct across the street. He was behind a locked gate and the issue is not a man standing naked. The breach of the peace issue has to be immediate. It has to be such that a breach of the peace is going to take place at that moment. This is going on across the street that there's some sort of discord between these people, which again, Mr Saucedo thought he was the complainant. He was complaining about the number of times that Mr Cortez's grandfather had been peeing in front of his wife. He had made multiple complaints and, you know, the city of San Benito is not a very large place. Supports can take judicial knowledge of that. If there have been multiple neighborhood complaints between two neighbors, they're going to know about it. And so the question is that he did not bat his hands away until he was on the ground. And your honor brought up the issue of a genuine issue of fact. And under the Basan Expo, Basan versus Hidalgo County, 5th Circuit, 2001 mentor case, Great American Insurance, 5th Circuit, 2005. If there is a fact issue that's come, the court may not decide qualified immunity on a summary judgment period. Unequivocally, there is clearly a fact question here, and it is improper to decide by summary judgment. Thank you, Counsel. We have your argument. Thank you, Counsel. I thank you, Your Honor.